FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 15, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TIANNA B.,[1]

                Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                Defendant.

No.    4:20-cv-5125-EFS

**ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF**

      Plaintiff Tianna B. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom reports, the Court grants summary judgment in favor of Plaintiff, denies the Commissioner's motion for summary judgment, reverses the decision of the ALJ, and remands this matter for further proceedings.

//

/

---

[1] For privacy reasons, the Court refers to every social security plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

# I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[2]  Step one assesses whether the claimant is engaged in substantial gainful activity.[3]  If the claimant is engaged in substantial gainful activity, benefits are denied.[4]  If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[6]  If the claimant does not, benefits are denied.[7]  If the claimant does, the disability evaluation proceeds to step three.[8]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[9]  If an impairment or combination of impairments meets or equals one of the listed impairments (a "listing"), the claimant is

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[4] *Id.* §§ 404.1520(b), 416.920(b).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[7] *Id.* §§ 404.1520(c), 416.920(c).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

conclusively presumed to be disabled.[10]  If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[11]  If the claimant can perform past work, benefits are denied.[12]  If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13]  If so, benefits are denied.  If not, benefits are granted.[14]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[15]  At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] 20 C.F.R. §§ 404.1520(d), 416.920(d).

[11] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[14] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

## II.    Factual and Procedural Summary

In November 2016, Plaintiff filed a Title II application for a period of disability and benefits.  In February 2017, Plaintiff filed a Title XVI application for supplemental security income.[17]  Plaintiff alleged an onset date of January 26, 2017.[18]  She asserted disability based on sleep apnea, restless leg syndrome, arthritis, ureter tube injury, hernia, lower back pain, bilateral knee pain, posttraumatic stress disorder (PTSD), bi-polar disorder, anxiety, depression, and insomnia.[19]  Plaintiff's claims were denied initially and upon reconsideration.[20] Plaintiff then requested an administrative hearing.

In June 2019, Administrative Law Judge Mark Kim presided over the requested administrative hearing.[21]  An impartial medical expert, an impartial vocational expert, and Plaintiff each presented testimony at the hearing.[22]

In denying Plaintiff's disability claims, the ALJ found as follows:

- Insured Status — June 30, 2022, would be Plaintiff's date last insured.[23]

---

[17] AR 346.

[18] AR 68.

[19] *See* AR 387.

[20] AR 217, 232.

[21] AR 68.

[22] AR 183.

[23] AR 70.

- Step One — Plaintiff had not engaged in substantial gainful activity since January 26, 2017, the alleged onset date.[24]

- Step Two — Plaintiff had the following medically determinable severe impairments: morbid obesity, right hip osteoarthritis, abdominal wall hernia, depressive disorder, anxiety disorder, and PTSD.[25]

- Step Three — Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[26]

- RFC — Plaintiff had the RFC to perform light work with the following additional limitations:

  o No climbing of ladders or scaffolds, crouching, or crawling.

  o Can occasionally climb ramps and stairs, stoop, and kneel.

  o Should avoid unprotected heights.

  o Should avoid occasional exposure to extreme temperatures and excessive vibrations.

  o Work limited to simple, routine type tasks with a reasoning level of three or less.

  o Only occasional, simple changes in the work setting.

---

[24] AR 70.

[25] AR 71.

[26] AR 72.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

○ Only occasional superficial interaction with the public and coworkers.[27]

- Step Four — Plaintiff was unable to perform any past relevant work.[28]

- Step Five — Considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, including the following representative occupations: marker, small products assembler II, and garment sorter.[29]

In July 2019, the ALJ issued a written decision finding Plaintiff had not been under a disability as defined by the Social Security Act ("the Act") from January 26, 2017, through the date of the ALJ's decision, July 16, 2019.[30]  Plaintiff appealed to the Appeals Council, which denied review.[31]  Plaintiff then appealed to this Court, primarily asserting that the ALJ failed to account for Plaintiff's fibromyalgia, her symptom testimony, and certain medical opinions which, she argues, show that she would miss more than one day of work per month on average.[32]

//

/

---

[27] AR 74.

[28] AR 79.

[29] AR 80.

[30] AR 81.

[31] AR 1–6.

[32] *See generally*, ECF No. 27.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[33] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[34]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[35]  Because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[36]  The Court considers the entire record as a whole.[37]

Further, the Court may not reverse an ALJ decision due to a harmless error.[38]  An error is harmless "where it is inconsequential to the ultimate

---

[33] 42 U.S.C. § 405(g).

[34] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[35] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[36] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[37] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole," not simply the evidence cited by the ALJ or the parties.) (cleaned up).

[38] *Molina*, 674 F.3d at 1111.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

nondisability determination."[39]  The party appealing the ALJ's decision generally bears the burden of establishing harm.[40]

## IV.    Analysis

Plaintiff alleges the ALJ erred by (1) rejecting Plaintiff's fibromyalgia as a severe impairment at step two, (2) rejecting Plaintiff's symptom reports, (3) improperly evaluating certain medical opinions, (4) conducting inadequate analysis and failing to consider Listing 14.09D at step three, and (5) providing an incomplete hypothetical to the vocational expert at step five.[41]  For the reasons discussed below, the Court finds Plaintiff failed to establish that the ALJ erred at step two, but the Court finds the ALJ did err in rejecting Plaintiff's symptom reports without providing the requisite clear and convincing reasons.  Remand is required because that error impacted nearly every aspect of the ALJ's analysis, and the Court therefore need not address Plaintiff's remaining arguments.

## A.    Fibromyalgia: Plaintiff fails to show consequential step-two error.

Plaintiff asserts that the ALJ reversibly erred by dismissing her fibromyalgia as a severe impairment at step two without providing adequate explanation.[42]  The Court disagrees.

---

[39] *Molina*, 674 F.3d at 1115 (cleaned up).

[40] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[41] *See generally* ECF Nos. 27 & 32.

[42] *See* ECF No. 27 at 12–13.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1.  <u>Requirement to Present "Appropriate Medical Evidence"</u>

At step two of the sequential process, the ALJ is required to find whether the claimant suffers from any "severe" impairments by first determining whether the claimant has a medically determinable impairment (MDI); then, for any MDI found, the ALJ must determine whether that MDI is severe.[43]  Importantly, to establish an MDI, a claimant's symptom reports, diagnoses, and even medical opinions will not suffice; every MDI "must be established by objective medical evidence from an acceptable medical source."[44]  And establishing the specific MDI of fibromyalgia requires an even more particularized subset of objective medical evidence.

To establish fibromyalgia as an MDI, the record must contain "appropriate medical evidence," which can come only from a diagnosing medical or osteopathic doctor.[45]  Additionally, such appropriate medical evidence "must document that the physician reviewed the person's medical history and conducted a physical exam."[46]

---

[43] 20 C.F.R. §§ 404.1520(c), 416.920(c); *id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also* Soc. Sec. Ruling (SSR) 85-28, *Titles II & XVI: Med. Impairments That Are Not Severe* (S.S.A. 1985).

[44] 20 C.F.R. §§ 404.1521, 416.921.  For this reason, the ALJ's error in improperly discounting Plaintiff's symptom reports did not affect the ALJ's step-two analysis.

[45] SSR 12-2p, *Titles II & XVI: Evaluation of Fibromyalgia* (S.S.A. 2012); *id.* § I. *See also id.* § III.A.1; 20 C.F.R. §§ 404.1513(a), 416.913(a).

[46] SSR 12-2p § I.

Even then, to establish fibromyalgia as an MDI, the diagnosing physician must provide the three following categories of appropriate medical evidence.[47]

First, there must be evidence showing the claimant has a "history of widespread pain."

> [T]hat is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months.  The pain may fluctuate in intensity and may not always be present.[48]

///

//

/

_____

[47] *See* SSR 12-2p § II ("We will find that a person has an MDI of [fibromyalgia (FM)] if *the physician* diagnosed FM *and provides the evidence we describe . . . .*" (emphasis added)).  Read strictly, this language indicates that for any evidence to be considered at this stage, its source must a medical or osteopathic doctor who did *all* of the following: (1) reviewed the claimant's medical history, (2) conducted a physical exam, and (3) diagnosed the claimant with fibromyalgia. *Cf. also id.* § III.A.B.1 (noting that evidence from other sources may be requested and considered to determine whether the claimant has *another* MDI—not the MDI of fibromyalgia—and/or to evaluate the severity and functional effects of fibromyalgia or any other impairments).

[48] SSR 12-2p §§ II.A.1, II.B.1.

Second, the physician's records must show EITHER

(A)  "At least 11 positive tender points on physical examination . . . .  The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist."[49]

     OR

(B)  "Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions,[50] especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome."[51]

Third, the physician's records must also show that other disorders that could cause the symptoms, signs, and/or co-concurring conditions were excluded.[52]  This

-------

[49] SSR 12-2p §§ II.A.2.

[50] Signs and co-occurring conditions may include the following:

> muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms.

SSR 12-2p § II.B.2 n.9, n.10.

[51] SSR 12-2p § II.B.2.

[52] SSR 12-2p §§ II.A.3, II.B.3.

is because "[o]ther physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from [fibromyalgia]."[53]

### 2. Plaintiff's Lack of Appropriate Medical Evidence

As relevant here, in discussing Plaintiff's fibromyalgia claims and diagnoses, and in rejecting fibromyalgia as an MDI, the ALJ stated as follows:

> I note that the claimant carries diagnoses of fibromyalgia . . . .
> The record does not contain the necessary diagnostic criteria for
> the diagnosis of fibromyalgia, and it appears to be a diagnosis in
> response to her complaints of pain.[54]

#### a.  *Plaintiff waived argument regarding the MDI of fibromyalgia.*

As a preliminary matter, Plaintiff has not articulated how the evidence of record satisfies the requirements set forth in Social Security Ruling 12-2p.  The Court "will not ordinarily consider matters on appeal that are not specifically and

---

[53] SSR 12-2p §§ II.A.3, II.B.3.  "Some examples of other disorders that may have symptoms or signs that are the same or similar to those resulting from FM include rheumatologic disorders, myofascial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders." *Id.* § II.A.3 n.7.

[54] AR 72.  Notably, a state-agency reviewing physician also concluded that the record did not establish fibromyalgia as a medically determinable impairment. *See* AR 238.

distinctly argued."[55]  An opening brief must contain the "appellant's contentions

and the reasons for them, with citations to the authorities and parts of the record

on which the appellant relies."[56]  The Court therefore holds that Plaintiff has

waived arguments as to whether the ALJ should have included fibromyalgia as a

severe MDI at step two.[57]  Moreover, even assuming arguendo that Plaintiff had

not waived this issue, the Court finds no error here.

> ### b.  <u>The record lacks the appropriate medical evidence required to</u>
> ### <u>establish fibromyalgia as an MDI.</u>

Having reviewed the record, the Court finds it lacks the appropriate medical

evidence required to establish fibromyalgia as one of Plaintiff's MDIs.  The medical

and osteopathic doctors' treatment notes of record do not reflect the requisite

history of "pain in *all* quadrants" of Plaintiff's body.[58]  There is no record of a

medical or osteopathic doctor independently diagnosing Plaintiff with fibromyalgia;

rather, the earliest treatment notes of record show that Plaintiff had already been

diagnosed with fibromyalgia—providing no indication of the original date of

---

[55] *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (quoting *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir.1992)); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (same).

[56] *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) (quoting Fed. R. App. P. 28(a)(8)(A)).

[57] *See Indep. Towers*, 350 F.3d at 929–30 .

[58] *See* SSR 12-2p §§ II.A.1, II.B.1.

diagnosis, identity of the diagnosing provider, or the basis for the diagnosis—and this prior diagnosis was then passed along throughout the rest of Plaintiff's treatment history.[59]  Similarly, there are no records of a medical or osteopathic doctor performing a physical exam resulting in a finding that Plaintiff had at least 11 positive tender points.[60]  Although it is arguable that Plaintiff repeatedly reported manifestations of six or more fibromyalgia symptoms, many of those reports were made to non-physicians and were not included in a medical or osteopathic doctor's notes.[61]  Finally, the record leaves unclear whether, or to what

---

[59] *See* AR 559–60 (May 2016: noting as part of Plaintiff's first appointment with her new primary care provider that Plaintiff had previously been diagnosed with fibromyalgia and was already seeing a pain specialist); *see also* AR 72 (ALJ noting the medical expert testified that he saw the fibromyalgia diagnosis but that it lacked a substantiating examination); AR 191 (medical expert's testimony).

[60] *See* SSR 12-2p §§ II.A.2.

[61] *See* SSR 12-2p § II.B.2; *id.* § II.B.2 n.9, n.10 (providing a list of fibromyalgia symptoms). *See also, e.g.*, AR 75; AR 198 (Plaintiff testifying to having sunlight sensitivity, but in the context of medication side effects); AR 817 (Plaintiff reporting diarrhea, nausea, and vomiting); AR 857 (physician diagnosing Plaintiff with irritable bowel syndrome with diarrhea); AR 879 (Plaintiff reporting dry eyes, nausea, muscle aches, migraines, depression, sleep disturbances, and fatigue).

extent, Plaintiff's physicians sought to exclude other disorders that could have been causing Plaintiff's symptoms, signs, and/or co-concurring conditions.[62]

       c.   <u>*Plaintiff fails to show any error in the ALJ's fibromyalgia findings at step two and step three.*</u>

Because the record lacks the appropriate medical evidence required by Ruling 12-2p, the Court holds the ALJ did not err in omitting fibromyalgia as one of Plaintiff's MDIs.  Without fibromyalgia as an established MDI, the ALJ was not required to proceed any further under Ruling 12-2p in analyzing Plaintiff's fibromyalgia claims.[63]  For the same reason, and contrary to Plaintiff's arguments on appeal, the ALJ was under no obligation to consider Listing 14.09D at step three.[64]

    3.  <u>Reconsideration Starting at Step Two on Remand</u>

Although Plaintiff failed to establish fibromyalgia as an MDI at step two, as discussed below, the Court is remanding this case for further proceedings.

---

[62] *See* SSR 12-2p §§ II.A.3, II.B.3.

[63] *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *Cf. also* SSR 12-2p § II ("If we cannot find that the person has an MDI of FM but there is evidence of another MDI, we will not evaluate the impairment under this Ruling.").

[64] *See* ECF No. 27 at 14–15 (asserting that "the ALJ's failure to consider Listing 14.09D in accordance with SSR 12-2p regarding the claimant's fibromyalgia constitutes harmful legal error on its own").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

1    Accordingly, and because subsequently acquired medical evidence may alter the

2    ALJ's analysis, the Court finds it appropriate for the ALJ to begin reconsideration

3    at step two.[65]

4    **B.    Plaintiff's Symptom Reports: The ALJ reversibly erred.**

5        Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting

6    her symptom reports.[66] The Court agrees.

7        1.    Plaintiff's Symptom Reports

8        Here, in his written decision, the ALJ summarized Plaintiff's symptom

9    testimony, saying in relevant part,

10        She testified she struggles with feelings of hopelessness and she
        has a lot of depression and anxiety, which a lot of times prevents
11        her from doing things she really enjoys. She feels afraid of a lot
        of things, such as being around a lot of people. She does not like
12        going out in public or someone touching her. . . . She has a hard
        time even getting out of bed some mornings. Therapy helps her
13        to a certain extent, but medications have not been that helpful.
        . . . She has a hard time with significant stress or pressure and
14        she will just close up. . . . Cold weather and heat affects her a
        lot, and her anxiety and depression are worse during the winter
15        months. . . . She testified that when she has worked, the first
        month is ok, but after that, her physical issues and her anxiety

16    _____

17    [65] For instance, the developed record may have more information about Plaintiff's

18    bipolar disorder diagnosis. *Cf. e.g.*, AR 809 (July 2017: examining psychologist

19    diagnosing Plaintiff with "Bipolar I Disorder, Moderate, Current Episode

20    Depressed); AR 878 (Feb. 2019: "Bipolar disorder - manic episodes are not frequent,

21    but has a lot of depression."); AR 25 (Feb. 2020: ordering Vraylar for bipolar

22    disorder).

23    [66] *See* ECF No. 27 at 15–20.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

and depression kick in and she will start missing work. Or, she will have a manic episode if she pushes herself too far. She keeps trying to work because she needs a home to bring her son back. . . . On really bad days, she will stay in bed and go a week without showering. She will not eat, or get dressed, or brush her hair. She might end up cutting or bite herself, and sometimes she will black out and do things like shave herself all over, but she will not remember doing it. This happens at least two days a week when she cannot function. Her pain levels affect her bad mental days as well. She testified she is in so much pain all the time, and that increases her depression and anxiety.[67]

### 2. The ALJ's Lack of Specific, Clear, and Convincing Reasons

Because the record does not contain affirmative evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom reports after considering the relevant factors.[68]

#### a. *The ALJ improperly implied that objective medical evidence was required to substantiate Plaintiff's symptom reports.*

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "assertion of total disability under the Social Security Act is *not supported* by the weight of the evidence."[69] Then, the ALJ went on to explain that "the objective

---

[67] AR 75. *See also* AR 188–89, 193–205 (Plaintiff's hearing testimony).

[68] *See* 20 C.F.R. § 416.929(c); SSR 16-3p, 2016 WL 1119029, at *7; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[69] AR 75 (emphasis added).

record . . . *fails to substantiate* her subjective claims."[70]  Although medical evidence, or the lack thereof, can be a relevant factor in assessing the severity of a claimant's symptoms, an ALJ is not permitted to discount the claimant's symptom reports merely because they are not corroborated by the medical evidence.[71]  Thus, the ALJ legally erred by suggesting that objective medical evidence needed to support Plaintiff's symptom reports regarding her established medically determinable impairments.

> ### b. *The ALJ failed to explain why he rejected Plaintiff's symptom reports regarding her likely number of work absences.*

Plaintiff testified that she had "a lot" of depression and anxiety, which would interfere with her motivation and cause her to be afraid of getting out and interacting with people.[72]  She said she could sometimes do well, and have "good" periods for about a month at a time, but she would then inevitably miss too much work, explaining, "if it's not my depression and my anxiety, then it's a physical issue."[73]  Plaintiff testified to having "really rough days" where she would stay home.[74]  She stated that, unless she was having a "good" week or month, the

---

[70] AR 75 (emphasis added).

[71] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Carmickle*, 533 F.3d at 1161.

[72] AR 193–94.

[73] AR 200, 203.

[74] AR 201.

"rough" days would render her nonfunctional two or more days per week.[75]  She

also described how she can sometimes push herself "pretty far," but doing so tends

to cause a manic episode, such as cutting herself, blacking out, and shaving her

whole body.[76]

Plaintiff's symptom reports are generally consistent with her treatment

history, which shows consistent reports of periods of severe depression, manic

episodes, and repeatedly being fired due to excessive absences shortly after

beginning a new job.[77]  Also, as discussed further below, her symptom reports

regarding work absences are seemingly consistent with the same medical opinions

relied upon by the ALJ.  As such, the ALJ erred by failing to provide any

explanation whatsoever for rejecting Plaintiff's absence-related symptom reports.

c.    _The ALJ failed to explain how Plaintiff's symptom reports were_
      _inconsistent with other evidence._

An inconsistency between a claimant's symptom testimony and other

evidence of record can serve as a legitimate basis for discounting those symptom

---

[75] AR 203.

[76] AR 201–02.

[77] *See, e.g.*, AR 199 (Plaintiff testifying to losing job in January 2017 due to

excessive medical absences); AR 919 (June 2018: reporting Plaintiff was fired

"because she had too many doctors note[s]"); AR 1008 (July 2017: "She was fired in

January due to medical absences. . . ."); AR 992 (July 2018: "She has also lost 3 jobs

due to medical since seeing this [case manager] last.").

1    reports.[78]  However, general findings regarding inconsistency are insufficient;

2    "rather, the ALJ must identify what testimony is not credible and what evidence

3    undermines the claimant's complaints."[79]

4          The ALJ highlighted certain parts of the record that he apparently believed

5    were inconsistent with Plaintiff's symptom reports.  But the ALJ failed to explain

6    how any of the cited evidence conflicted with Plaintiff's symptom reports, and the

7    Court finds no contradiction.[80]  For instance, the ALJ pointed out that "although

8    depressed and/or anxious mood is noted in this record, she is also noted to have

9    normal mood and affect and all mental status examinations are generally within

10    normal limits."[81]  Yet, the mental status examinations of record generally did not

11    address any symptoms related to Plaintiff's medically determinable impairments of

12

13

14

------------------

15    [78] *See Rollins*, 261 F.3d at 857; *Carmickle*, 533 F.3d at 1161.

16    [79] *Ghanim*, 763 F.3d at 1163 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

17    1996)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring

18    that an ALJ sufficiently explain why he discounted the claimant's symptom

19    claims).

20    [80] *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must

21    specifically identify the testimony she or he finds not to be credible and must

22    explain what evidence undermines the testimony.").

23    [81] AR 76 (cleaned up).

depression, anxiety, or PTSD.[82]  Notably, most of the records indicating Plaintiff

presented with a normal mood and affect did not arise in the context of mental-

health treatment, meaning Plaintiff's mood and affect were unlikely to be of import

to the authoring provider;[83] the record leaves unclear how many of the normal-

mood notations were based on substantive evaluations as opposed to being included

as boilerplate language.[84]  And when the focus of the visit was Plaintiff's mental

_____

[82] *See, e.g.*, AR 880 (including entries for insight, judgment, orientation, and memory).

[83] *See Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-health professional to document observations about the claimant's mental-health symptoms); *see also Jajo v. Astrue*, 273 F. App'x 658, 660 (9th Cir. 2008) (not reported) ("The ALJ relied on the lack of corroboration on the part of the orthopedic consultant and various emergency room reports.  However, the purpose of those visits was not to assess [the claimant]'s mental health, and thus any lack of corroboration is not surprising.").

[84] *See, e.g.*, AR 592 (being seen for gastrointestinal issues); AR 604 (being seen for hernia); AR 607–08 (treatment note for the same pain-management visit stating in one section, Normal mood, affect," and then stating in another, "The patient is nervous/anxious."); AR 880 (being seen for leg pain); AR 945 (being seen for diarrhea, nausea, and vomiting).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 21

1    health, her mood and affect were usually noted as consistent with her claimed

2    mental-health problems.[85]

3         More importantly, the ALJ failed to explain how the mixed notation

4    regarding Plaintiff's mood and affect undermine her symptom reports.  Setting

5    aside that mental-health symptoms may be easily masked and/or overlooked if one

6    is not specifically looking for them,[86] depression and anxiety symptoms commonly

7    wax and wane.[87]  Plaintiff testified to having good periods, but that overall, her

8    various impairments—largely her depression and anxiety—caused her to

9    frequently miss work when she tried to hold a job.[88]  These symptom reports

10   appear fully consistent with the longitudinal record.

11              d.    _Reports of Plaintiff doing "well" on medications were not a_

12                    _legitimate basis to discount her symptom reports._

13        The ALJ referenced notes of Plaintiff improving and doing "well" on

14   medications.[89]  When evaluating symptom reports, ALJs are directed to consider

15   _____

16   [85] _See_ AR 808 ("When asked to describe her mood, she states, 'back and forth,

17   anxious, angry and irritable, a bunch of emotions wrapped into one.'  The

18   claimant's affect was congruent with her stated mood."); AR 987 (noting, "She

19   describes her mood as depressed and presents with congruent affect.").

20   [86] _See Diedrich_, 874 F.3d at 641; _see also Jajo_, 273 F. App'x at 660 (not reported).

21   [87] _See Holohan,_ 246 F.3d at 1205.

22   [88] AR 199–205

23   [89] AR 76.

the effect that medication and other forms of treatment have on a claimant's symptoms.[90]  Additionally, the ALJ must "sufficiently consider the duration of, or chronological fluctuation in, [the claimant]'s symptoms."[91]  "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."[92]

Reports of improvement in mental health "must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms" as well as with an awareness that "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."[93]  Without more, general references to improvement are insufficient to render repeatedly reported symptoms "inconsistent" and therefore not credible.[94]  To undercut a claimant's credibility and her disability claim, the improvement in question must be of the kind and

---

[90] 20 C.F.R. § 416.929(c)(3)(iv)-(v); *id.* at § 404.1529(c)(3)(iv)-(v); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

[91] *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021).

[92] *Holohan*, 246 F.3d at 1205.

[93] *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (cleaned up).

[94] *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200–01 (9th Cir. 2008).

1
2
3

degree that brings her symptoms outside the Act's definition of disability.[95]  The ultimate question is "whether the severity of the problem had decreased sufficiently to enable [her] to engage in gainful activity."[96]

4
5
6
7
8
9
10
11
12

Here, while there are several reports of Plaintiff doing "well" or otherwise improving on medication,[97] the longitudinal record is at best mixed regarding overall improvement in Plaintiff's mental health; throughout her treatment history, the treatment notes suggesting progress are about equal to the notes indicating setbacks.[98]  Even at times when the record reflects Plaintiff was taking her medications regularly, she reported severe symptoms such as mania with blackouts and self-cutting, as well as an inability to maintain a job due to excessive absences.[99]  Also, consistent with Plaintiff's testimony, the record shows that her

13

---

14

[95] *See id.*; *Holohan*, 246 F.3d at 1205.

15
16

[96] *See Warre*, 439 F.3d at 1006 (discussing the issue of medical improvement in the context of terminating benefits for a prior-established disability).

17

[97] *See, e.g.*, AR 860, 867, 883, 919,

18
19
20

[98] Compare, e.g., AR 847 (noting Plaintiff was started on Buspar but did not notice a difference, yet also noting "did well when she was on it"); *with, e.g.*, AR 919 (reporting worsening anxiety and Buspar not helping as much with anxiety).

21
22
23

[99] *See, e.g.*, AR 991 (July 2018: reporting losing jobs "due to medical" and reporting "mania where she blacks out, cuts, and [loses] time"); AR 897 (Sept. 2018: reporting three manic episodes since July 2018).

1      providers were frequently changing her mental-health medications to find a

2      combination that provided better and more sustained relief.[100]

3              The record leaves unclear to what extent Plaintiff's various medication

4      combinations improved her depression and/or anxiety, particularly her ability to

5      maintain regular attendance over a meaningful period of time.  The ALJ failed to

6      articulate how Plaintiff's symptom reports were inconsistent with the longitudinal

7      record, and the record lacks substantial evidence suggesting that any improvement

8      was both sustained and of sufficient degree to enable Plaintiff to engage in gainful

9      employment.[101]  Plaintiff's improvement is therefore not a clear and convincing

10      reason, supported by substantial evidence, for disregarding her symptom reports.

11      _____

12      [100] *See, e.g.*, AR 605 (May 2016: Plaintiff taking Vistaril for anxiety);  AR 576

13      (Dec. 2016: Plaintiff taking Buspar for anxiety and stopping Effexor for depression

14      and fibromyalgia and starting Cymbalta); AR 843–44 (noting "failed [C]ymbalta

15      and gabapentin" and starting Plaintiff on Savella); AR 833 (Sept. 2017: "was given

16      rx for [S]avella but has not noted a difference"); AR 939 (Jan. 2018: noting "seems

17      to be doing well" on increased Savella dose); AR 919 (June 2018: noting despite

18      taking it regularly, "[B]uspar doesn't seem to help w/ anxiety as it used to");

19      AR 883 (Jan. 2019: "has been off [S]avella for over a month but feels like she is less

20      depressed, has started taking [K]ratom w/ permission w/ her pain doctor[;] helped

21      more w/pain and mind set").

22      [101] *See Warre*, 439 F.3d at 1006; *Garrison*, 759 F.3d at 1017; *Attmore v. Colvin*, 827

23      F.3d 872, 877–78 (9th Cir. 2016) ("Although the ALJ pointed to isolated signs of

e.  _The ALJ failed to explain how any of Plaintiff's activities were inconsistent with her symptom reports._

The ALJ stated that Plaintiff's "reasonably high-functioning activities of daily living . . . are also not supportive of her allegation of total disability under the Social Security Act."[102]  In support, the ALJ cites several activities but fails to address the nature, frequency, or context of such activities.  For example, the ALJ cites to a July 2017 mental evaluation to say that Plaintiff reported "spending time with grandchildren, hiking with her son, throwing the football, walking on the river, [and] fishing."[103]  Yet, during that evaluation, Plaintiff merely reported that such activities had sometimes provided relief from her depression and anxiety symptoms.[104]  Plaintiff provided consistent testimony about her symptoms and activities, and nothing in the record suggests she engaged in any of those activities more than rarely.[105]

---

improvement, the ALJ could not find medical improvement on that basis unless the ups and the downs of [the Claimant]'s development showed sustained improvement.").

[102] AR 76.

[103] AR 76 (citing AR 807).

[104] AR 807.

[105] _See_ AR 195 (Plaintiff testifying that being around her children can "at times" help with her depression and anxiety.)

The ALJ also pointed to Plaintiff's activities of daily living, citing to a function report submitted on Plaintiff's behalf by her adult daughter. That report indicates that Plaintiff cares for her son and "cooks, does minor cleaning, laundry, dishes, sweeps, shops, drives, is able to handle her own finances, reads, watches TV, plays with grandchildren, [and] visits with friends and family members in person and on the phone or computer."[106] But, the same function report cited by the ALJ put caveats on many of those activities, such as explaining that the Plaintiff received a lot of assistance around the house, her ability to cook is limited to "sandwiches and frozen dinners, sometimes some chicken, pork chops and small side[s]," she has "emotional outbursts," and "a lot of times she gets tired easily playing with grandbabies."[107] Again, the ALJ failed to explain how any of the cited activities undermine Plaintiff's claims of depression and anxiety symptoms.[108] Plaintiff's ability to occasionally engage in these basic activities, often with difficulty, is not a clear and convincing reason for discounting Plaintiff's symptom reports.[109]

---

[106] AR 76 (citing AR 404–11).

[107] *See* AR 404–11.

[108] *Ghanim*, 763 F.3d at 1163 ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

[109] *See Diedrich*, 874 F.3d at 643 ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as

1

2

      *f.*   <u>*Plaintiff's unsuccessful work attempts were consistent with her*</u>
<u>*symptom reports.*</u>

3

4

5

      The ALJ wrote that Plaintiff "has worked at different jobs throughout the relevant period, including three months of substantial gainful activity, suggesting a higher degree of functional activity than she testified to."[110]  But as Plaintiff

6

7

8

9

10

11

points out on appeal, "Plaintiff testified to continuing unsuccessful attempts to work due to a desire to regain custody of her son, but the inability to maintain any of her jobs due to excessive medical absenteeism, as she missed one to two days per week due to depression, anxiety, and physical issues."[111]  Plaintiff's repeated terminations after short periods of employment are consistent with her symptom reports.

12

13

14

15

16

      "It does not follow from the fact that a claimant tried to work for a short period of time and, because of [her] impairments, *failed*, that [she] did not then experience [symptoms] severe enough to preclude [her] from *maintaining* substantial gainful employment."[112]  Rather, evidence that a claimant tried to work and failed will often support allegations of disabling symptoms.[113]  Indeed,

17

                        ―――――――――――――

18

19

well as occasional shopping outside the home, are not similar to typical work responsibilities.").

20

[110] AR 76–77.

21

[111] ECF No. 27 at 20 (citing AR 199–201).

22

[112] *Lingenfelter*, 504 F.3d at 1038.

23

[113] *See id.* (citing example cases).

attempts at work may be "especially convincing" where, as here, the claimant attempted work due to extreme circumstances—such as trying to regain custody of a child—making "it at least as likely that the claimant tried to work in spite of [her] symptoms, not because they were less severe than alleged."[114]

Plaintiff's testimony and the record both reflect that she was repeatedly terminated from work early into a job due to excessive absences.[115] In the context of being able to sustain gainful employment, even Plaintiff's longest job would be considered an unsuccessful work attempt.[116] "Where it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity."[117] Thus, the ALJ erred by relying on Plaintiff's unsuccessful work attempts to discount her symptom reports.

//

/

---

[114] *See Lingenfelter*, 504 F.3d at 1039.

[115] *See, e.g.*, AR 199–205, 919, 992, 1008.

[116] *See* 20 C.F.R. § 404.1592 (An applicant is entitled to a trial work period "during which [she] may test [her] ability to work and still be considered disabled."); 20 C.F.R. §§ 404.1574(c)(1), (3), 416.974(c)(1), (3) (noting that "work of 6 months or less [is considered] to be an unsuccessful work attempt" if the end was due to impairments); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 (9th Cir. 1999).

[117] *Gatliff*, 172 F.3d at 694.

g.  _The ALJ's finding that prescribed narcotics were inconsistent_
_with fibromyalgia is not supported by substantial evidence._

In the section of the ALJ's decision rejecting fibromyalgia as an MDI, the

ALJ stated, "Indeed, [Plaintiff] has been treated with chronic narcotics, a

treatment that is not only not appropriate for fibromyalgia, but has contributed to

her abdominal complaints."[118]  The Court, however, finds nothing in the record,

much less substantial evidence, to support the ALJ's declaration that prescribed

narcotics are "not appropriate for fibromyalgia"—in general, much less in

Plaintiff's specific case.  The Court therefore holds the ALJ erred in making this

finding.  For the reasons discussed  above, this error was harmless at step two.

Nonetheless, this error may have affected the ALJ's assessment of Plaintiff's

credibility and symptom reports throughout the rest of the disability analysis.

h.  _On remand, the ALJ must articulate specific, clear, and_
_convincing reasons, supported by substantial evidence._

Based on the above, the Court holds that the ALJ reversibly erred by failing

to provide specific, clear, and convincing reasons, supported by substantial

evidence for discounting Plaintiff's symptom reports.[119]  On remand, if the ALJ

again discounts Plaintiff's symptoms, the ALJ shall articulate specific, clear, and

[118] AR 72.

[119] _See_ 20 C.F.R. § 416.929(c); SSR 16-3p at *7; _Ghanim_, 763 F.3d at 1163;

_Lingenfelter_, 504 F.3d at 1036.

convincing reasons with citations to substantial evidence.[120]  General findings are insufficient because the Court cannot affirm discounting Plaintiff's symptoms for a reason not articulated by the ALJ.[121]  Further, when assessing Plaintiff's mental-health symptoms, the ALJ is encouraged to give due consideration to the purpose of the visit and the specialization of the provider.[122]

## C. Medical Opinions: Reconsideration is warranted.

Because reassessment of Plaintiff's symptom reports may influence the ALJ's analysis regarding the various medical opinions on record, reconsideration of the medical opinions is warranted as well.  On remand, especially given that the vocational expert testified to anything over one absence per month being employment prohibitive, the medical opinions regarding Plaintiff's likely absenteeism rate should be of particular concern, as the ALJ failed to explain in his decision why no absence-related limitations were included in Plaintiff's RFC.[123]

### 1. Dr. Metoyer's Opined Moderate Limitations

Patrick Metoyer, PhD, performed a mental evaluation of Plaintiff in July 2017 and, as relevant here, opined as follows regarding Plaintiff's mental-health based limitations:

> Due to her mood symptoms and tendency to isolate herself from others, her ability to maintain regular attendance in the

---

[120] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[121] *See Garrison*, 759 F.3d at 1010.

[122] *Cf. Diedrich*, 874 F.3d at 641.

[123] AR 213.

workplace is moderately impaired.  Her ability to complete a
normal work day or work week without interruption from mood
symptoms is likely moderately impaired.  Her ability to deal
with the usual stress encountered in the workplace is markedly
impaired if it involves being around other individuals, self-
organization, and persistence in task.[124]

2.  Dr. Haney's Opined Moderate Limitations

Steven Haney, MD, performed a mental residual functional capacity

assessment of Plaintiff in November 2017.[125]  Dr. Haney opined that Plaintiff

would be moderately limited in several areas, including, as relevant here, the

following:

- "The ability to perform activities within a schedule, maintain regular
  attendance, and be punctual within customary tolerances."

- "The ability to complete a normal workday and workweek without
  interruptions from psychologically based symptoms and to perform at a
  consistent pace without an unreasonable number and length of rest
  periods."[126]

In explaining these limitations, Dr. Haney stated that Plaintiff would have

"occasional interference" from her psychologic symptoms, but they "are not seen as

significantly interfering with her [concentration, pace, and persistence] and her

ability to maintain work."  Yet, Dr. Haney went on to opine that there "may be a

---

[124] AR 810.

[125] AR 243–44.

[126] AR 243.

1    question of motivation," and "attendance may occasionally be compromised."[127]

2    Thus, Dr. Haney distinguished the persistence and concentration limitations from

3    those relating to motivation and absenteeism.

4        3.  Lack of Analysis Regarding Plaintiff's Likely Absence Rate

5         Neither Dr. Metoyer nor Dr. Haney provided an estimate regarding the

6    average number of days Plaintiff was likely to miss work over any given period.

7    The regulations generally describe a moderate limitation as meaning the claimant

8    has a "fair" ability to function in that area "independently, appropriately,

9    effectively, and on a sustained basis."[128]  Still, "a moderate impairment is not the

10   same as no impairment at all. . . ."[129]  And the Commissioner has recognized that

11   moderate limitations can sometimes result in disability, so they must be accounted

12   for in the claimant's RFC and addressed at steps four and five.[130]  After all, "the

13   _____

14   [127] AR 243.

15   [128] *See, e.g.*, Listing 12.00F (describing use of a rating scale with paragraph B

16   criteria in evaluating mental disorders).

17   [129] *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  *But cf. Pavlicek v. Saul*,

18   994 F.3d 777, 783 (7th Cir. 2021) ("'[F]air' in ordinary usage does not mean 'bad' or

19   'inadequate.'  So a 'moderate' limitation in performing at a consistent pace seems

20   consistent with the ability to perform simple, repetitive tasks at a consistent

21   pace.").

22   [130] *See* 81 FR 66138-01, *66147, *Revised Medical Criteria for Evaluating Mental*

23   *Disorders*, 2016 WL 5341732.

spectrum of limitation that may constitute 'moderate' limitation ranges from limitations that may be close to "marked" in severity to limitations that may be close to the 'mild' level."[131]

The ALJ assigned substantial weight to Dr. Metoyer's opinion as well as Dr. Haney's opinion.[132] Those doctors' opinions, Plaintiff's symptom reports, and the rest of the record all indicate that Plaintiff's impairments would cause her at least some difficulty in maintaining attendance at work on a sustained basis. However, without providing any explanation, the ALJ declined to include any such limitation when crafting Plaintiff's RFC and/or when conducting the step-four and step-five analyses. Without more, the Court cannot conclude that substantial evidence supports the ALJ's implicit finding that Plaintiff's impairments would not cause any significant issues with her attendance and ability to maintain employment. On remand, the ALJ is instructed to make specific findings, supported by detailed explanations and citations to substantial evidence, regarding Plaintiff's likely average absenteeism rate.

/////

////

///

//

/

---

[131] *See* 81 FR 66138-01, *66147, 2016 WL 5341732.

[132] AR 78.

## V.    CONCLUSION

The Court reverses the decision of the ALJ.  Because the Court finds the record does not clearly establish that Plaintiff is entitled to benefits, the Court remands this case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[133]

On remand, the Commissioner shall instruct the ALJ to reevaluate Plaintiff's disability claims as set forth above, starting at step two of the sequential evaluation process.  The ALJ is to give particular consideration on remand to Plaintiff's symptom reports and the medical opinions regarding Plaintiff's likely average absenteeism rate, and the ALJ shall provide a detailed explanation for how such evidence was considered in crafting Plaintiff's RFC and in reaching an ultimate determination.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 27**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 31**, is **DENIED.**

---

[133] *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

1      3.      The decision of the ALJ is **REVERSED**, and this matter is

2              **REMANDED** for further proceedings consistent with this order.

3      4.      The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

4      5.      The case shall be **CLOSED**.

5      **IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

6  provide copies to all counsel.

7      **DATED** this 15th  day of March 2022.

8

9                        _____s/Edward F. Shea_____
                              EDWARD F. SHEA
10                      Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23